**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DORIS HAMMOND,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **NO.   23-cv-2039** |
| | : | |
| **MARTIN O'MALLEY,** | : | |
| **Commissioner of Social Security,** | : | |
| **Defendant.** | : | |

## <u>MEMORANDUM OPINION</u>

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                                  **May 29, 2024**

Plaintiff Doris Hammond brought this action seeking review of the Commissioner of Social Security Administration's decision denying her claim for Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI) benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  This matter is before me for disposition upon consent of the parties.  For the reasons set forth below, Plaintiff's Request for Review (ECF No. 9) is **GRANTED**, and the matter is remanded for further proceedings consistent with this memorandum.

## I.      PROCEDURAL HISTORY

On February 10, 2020, Plaintiff protectively filed for SSDI and SSI, alleging disability since January 14, 2020, due to mental illness, headaches, high blood pressure, fatigue and numbness in the hands and feet.  (R. 310, 322).  Plaintiff's applications were denied at the initial level and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  (R. 177-92, 195-204, 215-16).  Plaintiff, represented by counsel, and a vocational

expert (VE) testified at the October 14, 2021 administrative hearing.  (R. 40-69).  On November

23, 2021, the ALJ issued a decision unfavorable to Plaintiff.  (R. 40-69).  Plaintiff appealed the

ALJ's decision, but the Appeals Council denied Plaintiff's request for review on March 27,

2023, thus making the ALJ's decision the final decision of the Commissioner for purposes of

judicial review.  (R. 1-6).

On May 26, 2023, Plaintiff filed a complaint in the United States District Court for the

Eastern District of Pennsylvania.  (Compl., ECF No. 1).  On June 9, 2023, Plaintiff consented to

my jurisdiction pursuant to 28 U.S.C. § 636(C).  (Consent, ECF No. 5).  On September 18, 2023,

Plaintiff filed a Brief and Statement of Issues in Support of Request for Review.  (Pl.'s Br., ECF

No. 9).  The Acting Commissioner at the time filed a Response on October 17, 2023, and on

October 31, 2023, Plaintiff filed a reply.  (Resp., ECF No. 10; Reply, ECF No. 11).


## II.    FACTUAL BACKGROUND[1]

The Court has considered the administrative record in its entirety and summarizes here

the evidence relevant to the instant request for review.

Plaintiff was born on March 30, 1970, and was 49 years old on the alleged amended

disability onset date.  (R. 24, 367).  She completed high school and a medical assistant

certification program.  (R. 323).  Plaintiff previously worked as an outpatient registration clerk at

a hospital.  (*Id.*).

### A.    Medical Evidence

Plaintiff was hospitalized at Fairmount Behavioral Health System in Philadelphia for

---

[1]  Because Plaintiff's request for review implicates only her mental impairments, the Court does not summarize the evidence relating to any physical impairments.

suicidal ideation between December 6 and 15, 2016.  (R. 415-38).  She attempted to overdose on cough syrup the day prior to her admission but "only got 2, 3 tablespoons" down.  (R. 416-17).

She was also hospitalized from September 1 to 11, 2018, at Brooke Glen Behavioral Health in Fort Washington, Pennsylvania, for depression, anxiety and auditory hallucinations. (R. 442).  She expressed concern about showering with the television on because it might be recording her, and she also admitted to talking to people on the television.  (*Id.*).  She further acknowledged that she had recently stopped taking her medications.  (*Id.*).

The record contains medical evidence from psychiatrist Beatrice Desir, D.O., and others at Merakey Delaware County, NHS Life Guidance Services (Merakey), in Sharon Hill, Pennsylvania.  (R. 512-667, 692-911, 1019-35).  Throughout her treatment at Merakey, Plaintiff generally was cooperative with appropriate affect, logical and goal-directed thought processes, good attention, intact memory and fair insight and judgment, (*see, e.g.,* R. 518-19, 525, 530, 535, 540, 545, 550, 701-02), but also endorsed bizarre and paranoid beliefs, as set forth below.

On August 27, 2018, Plaintiff had her initial therapy session, where she reported guilt over her inability to save her mother and nephew from a fatal fire.  (R. 774).  She also relayed belief in "government DNA conspiracy theories and carbon imprints."  (*Id.*).  The therapist recorded that her "delusions and paranoia make it sometimes difficult to hold a conversation as she becomes distracted and overwhelmed with her worries about the government and other conspiracy theories," but she was receptive to treatment.  (*Id.*).  At an October 25, 2018 session, she was continuing to have delusions about the government collecting DNA from her and others near her, leading her to wear latex gloves when signing her name or touching objects to avoid leaving "a print."  (R. 778).  She learned how anxiety affects her PTSD.  (*Id.*).  At a comprehensive psychiatric evaluation on November 9, 2018, Plaintiff reported intrusive

memories, mood swings, anxiety, lack of trust and a belief that the government controls people's thoughts through food, which causes her not to eat outside the home.  (R. 692).  Upon mental examination, she demonstrated vigilance, poor boundaries, suspicion, and paranoia.  (R. 695).

On January 3, 2019, Plaintiff again expressed concerns that people could control her through her food.  (R. 512).  However, two weeks later she reported feeling better after restarting her medications.  (*See* R. 563 ("I started thinking about government conspiracies and I know that's not good.")).  At the end of February 2019, she was doing well on her medications and reported watching her grandkids.  (R. 518).  On March 6, 2019, Plaintiff was noted to be responding well to treatment, although she reported increased anxiety, fear of contaminated seat cushions and continued adherence to a belief that all people are "from the future."  (R. 576).  She again stated at an April 24, 2019, appointment that her medication was helping her.  (R. 586).  On May 1, 2019, she and her therapist discussed "how increased stress also elevates her persecutory/paranoid beliefs," although the therapist added that Plaintiff "was re-directable away from conspiracy theories."  (R. 588).  She was "coping" while generally taking her medication as directed, although she also sometimes skipped days and acknowledged this could lead to relapse.  (R. 524).

At the end of May 2019, Plaintiff reported using her coping skills to manage getting through the stress of her car breaking down.  (R. 594).  One week later, the frequency and intensity of her intrusive thoughts about government conspiracy theories had increased, despite improvement overall.  (R. 596).  At a September 11, 2019 appointment, she reported getting along better with her family than the week before.  (R. 534).  A week later, Plaintiff acknowledged to her therapist that she sometimes stops taking her medications when she is feeling well, but that this leads to increased symptoms.  (R. 621).  On November 20, 2019, she

had anxiety and worry with racing thoughts but added: "I am stable on psych meds."  (R. 539).

On December 11, 2019, Plaintiff told her therapist that her mood had been stable while taking

her medications consistently.  (R. 637).

       At a January 22, 2020 visit with Dr. Desir, Plaintiff reported occasional nightmares about

the fire that killed her family members, but overall good sleep, and that she felt well on her

medications.  (R. 544).  She again endorsed a belief in her DNA being collected from things she

touches in public, as well as others being able to time travel (although not her) and added that

she also experiences paranoia about strangers looking at her.  (*Id.*).  Plaintiff continued to

subscribe to these delusions at a March 2, 2020 visit with Dr. Desir.  (R. 549-50).  She reported

being denied for disability for the fourth time but claimed that "every time she tries to work she

has a breakdown and is hospitalized."  (R. 549).  At another evaluation by Dr. Desir on July 8,

2020, Plaintiff reported racing thoughts, inability to sleep for days at a time, pacing, delusional

thoughts, pressured speech, continued delusions about government conspiracies, and nightmares

about the fire.  (R. 699, 702).  However, she was stable on her medications and not acting on her

chronic delusions, which remained at baseline.  (R. 703).  On September 17, 2020, Dr. Desir

recorded that Plaintiff continued to experience "delusions of losing time while sleeping

and . . . of being mind controlled while having a UTI."  (R. 758).  However, her chronic

delusions and belief in conspiracy theories remained "at baseline" at follow up examinations in

November 2020, February 2021 and August 2021.  (R. 764, 769, 1030).  In this final treatment

note, Dr. Desir observed that Plaintiff was "doing well on her medication regimen."  (R. 1030).

       On August 26, 2021, Dr. Desir opined that Plaintiff had satisfactory or better

functionality in all work-related mental abilities except two, in which she was "seriously

limited": "work in coordination with or proximity to others without being unduly distracted" and

"deal with normal work stress." (R. 1034). She also noted that on average Plaintiff would miss work one day per month due to her impairments. (R. 1035). She explained:

> Pt has worked in the past but working in a stressful environment le[d] to her decompensating quickly. When stressed she tends to neglect her self care (eating, sleeping, taking medications regularly) and this leads to the exacerbation of her symptoms. Pt has been stable on her medication regimen and is doing well. Pt would do best in a low stress work envi[r]onment[.]

(*Id.*).

On January 21, 2021, State agency psychological consultant John David Gavazzi, Psy.D., opined that Plaintiff had mild limitations in understanding, remembering or applying information and moderate limitations in interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. (R. 97). Upon reconsideration, on May 20, 2021, State agency psychological consultant Peter J. Garito, Ph.D., reached the same conclusions. (R. 139). Both also assessed her with "severe" "trauma- and stressor-related disorders" and further noted her bizarre beliefs and delusions, although Dr. Garito added that they do not affect her functioning. (R. 118, 140).

**B.    Non-Medical Evidence**

The record also contains non-medical evidence. In an Adult Function Report dated June 10, 2022, Plaintiff reported anxiety, agitation, lack of patience, trust issues and belief in conspiracy theories. (R. 337). Her activities of daily living (ADLs) included cleaning the house, doing laundry, caring for her dog, personal care without limitations, twice monthly meal preparation, walking, driving limited distances, using public transportation, shopping in stores, managing money, and watching television eight hours per day. (R. 337-40). She does not socialize with others. (R. 341). She checked boxes on the form indicating problems with memory and getting along with others (although she gets along well with authority figures).

6

(R. 342).  She can pay attention for 20 minutes and follow written and spoken instructions, but she does not handle stress or changes in routine well.  (R. 342-43).  When asked on the form about any unusual fears, she wrote: "Government control[s] us all.  We are in their hands. Everyone on earth."  (R. 343).

At the October 14, 2021 administrative hearing, Plaintiff testified that she also cares for a cat at home but that her driving is limited to 15 minutes at a time.  (R. 48).  She claimed to be unable to work because she would have to stop her medication due to drowsiness, but then she would be unable to function due to mental health issues, specifically mania.  (R. 51-53).  She added that she also suffers from "stress and anxiety, depression probably."  (R. 57).  She attended inpatient therapy prior to the Covid pandemic.  (R. 53).  She reported that she has no difficulties getting along with others unless she is disrespected.  (R. 54).  Plaintiff repeated that she performs essentially the same ADLs as listed in her Adult Function Report.  (R. 55).

Plaintiff also endorsed a variety of bizarre and paranoid delusions.  She stated her belief that her family members travel through time and space when they sleep (even though she cannot) and that they may be "a part of the Illuminati," a group of prominent individuals in the entertainment industry who assault children and worship the devil.  (R. 59-60).  She trusts no one.  (*Id.* at 63).  She claimed that she has a "third eye" that allows her to "see things differently" and that for the past year strangers have been calling her "mom" in public, but she "just do[es]n't have all the answers yet."  (*Id.*).  She testified that when she walks through the supermarket items will sometimes fly off the shelves behind her.  (*Id.* at 62).  She further alleged that the government is experimenting on everyone and that she has a fear of "contamination" and a need to "keep stuff [as] clean as possible so that energy won't get in my mind."  (*Id.* at 63).

7

## III.    ALJ'S DECISION

Following the most recent administrative hearing, the ALJ issued a decision in which she made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2.    The claimant has not engaged in substantial gainful activity since January 23, 2019, the amended onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: uterine adenomyosis and fibroids; iron deficiency anemia; obesity; bipolar I disorder, with psychotic features; and, depression (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she is limited to simple, repetitive tasks; only occasional simple decision making; only occasional routine changes in the work environment; no interaction with the public; occasional interaction with coworkers and supervisors; can work in the vicinity of others; but no working in tandem or together with coworkers.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on March 30, 1970 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8.      The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from January 23, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 21-39).  Accordingly, the ALJ found Plaintiff was not disabled.  (R. 34).


IV.     **LEGAL STANDARD**

To be eligible for benefits under the Social Security Act, a claimant must demonstrate to the Commissioner that he or she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of at least 12 months.  42

U.S.C. § 1382c(a)(3)(A).  A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  If she is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities.  If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work.  If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform her past work.  If the claimant cannot perform her past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4).  The disability claimant bears the burden of establishing steps one through four.

If the claimant is determined to be unable to resume previous employment, the burden shifts to

the Commissioner at step five to establish that, given the claimant's age, education, work

experience, and mental and physical limitations, he is able to perform substantial gainful

activities in jobs existing in the national economy.  *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88,

92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited.  A district court is

bound by the factual findings of the Commissioner if they are supported by substantial evidence

and decided according to correct legal standards.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir.

1999).  Substantial evidence is "more than a mere scintilla" and "such relevant evidence as a

reasonable mind might accept as adequate."  *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118

(3d Cir. 2000) (citations omitted).  Even if the record could support a contrary conclusion, the

decision of the ALJ will not be overruled as long as there is substantial evidence to support it.

*Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The court has plenary review of legal

issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).


## V.      DISCUSSION

In her request for review, Plaintiff raises three claims:

> (1)     The ALJ erroneously found Plaintiff's post-traumatic stress
> disorder not medically determinable, and failed to consider
> it when determining her residual functional capacity in
> violation of the regulations.

> (2)     The ALJ erroneously found not persuasive the opinion of
> the treating psychiatrist which, if properly credited, would
> have required a finding of disability.

> (3)     The ALJ failed to include all of Plaintiff's credibly
> established limitations in the RFC or the hypothetical she
> presented to the vocation expert, whose testimony does not
> constitute substantial evidence of other work available for
> Plaintiff.

(Pl.'s Br., ECF No. 9, at 4-20).

### A.      Failure to Consider PTSD at Step Two and in RFC Formulation

#### 1.      The Parties' Positions

Plaintiff argues that the ALJ implicitly concluded that her PTSD was not a medically

determinable impairment (whether severe or non-severe) when she omitted it from her step two

discussion. (Pl.'s Br., ECF No. 9, at 4). She contends that this determination constitutes

reversible error for three reasons. First, she observes that Dr. Desir and others have consistently

diagnosed her with PTSD stemming from witnessing a fire that killed her mother and nephew in

1987. (*Id.* at 5 (citations omitted)). Second, she observes that the ALJ found persuasive the two

State agency psychologists' opinions finding that her PTSD was medically determinable and

severe yet apparently reached a contrary conclusion without explanation, in violation of regulations requiring ALJs to articulate how they considered the persuasiveness of medical opinions and prior administrative findings.  (*Id.* at 5-6 (citing 20 C.F.R. §§ 404.1520c, 416.920c) (additional citations omitted)).  Third, Plaintiff points out that in a decision issued the day before her alleged disability onset date a prior ALJ determined that her PTSD was medically determinable and severe.  (*Id.* at 6 (citing R. 76)).  Although she acknowledges that the instant ALJ was not bound by this determination, she maintains that she should have considered it and explained how Plaintiff's PTSD became medically non-determinable one only day later.  (*Id.* at 6-7 (citing 20 C.F.R. § 404.1520c(b))).  She continues that even if it was not severe on its own, it was nonetheless medically determinable and should have been considered in combination with her severe impairments, which might have resulted in a "disabled" determination, thus establishing reversible error.  (*Id.* at 7 (citing 20 C.F.R. § 404.1523(c))).  She adds that the failure to consider her medically determinable PTSD also ran afoul of caselaw requiring ALJs to consider the entire record and provide reasons for rejecting evidence.  (*Id.* at 7-8 (citing *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993); *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986); *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983))).

The Commissioner responds that any error in not finding Plaintiff's PTSD to be a severe, medically determinable impairment was harmless because the ALJ nonetheless resolved step two in her favor when she determined that Plaintiff had other such impairments and thus proceeded to consider Plaintiff's mental functioning generally (including her subjective complaints, mental status examination results, response to treatment and the opinions of the State agency experts and treating providers who explicitly considered the impairment) and to ultimately account for her functional limitations in the RFC, aside from any specific diagnosis.  (Resp., ECF No. 10, at 5-6,

8 (citing *Cuffee v. Berryhill*, 680 F. App'x 156, 160 (4th Cir. 2017); *Jones v. Sullivan*, 954 F.2d

125, 128-29 (3d Cir. 1991); *Burnside v. Colvin*, 197 F. Supp. 3d 705, 719 (M.D. Pa. 2015)

(record citations omitted))).  He insists that the step-two severity analysis is merely a threshold

consideration of whether a claimant has shown any medically determinable impairments and, so

long as one has been established and the ALJ continues the five-step process and considers all

impairments (severe or not) in assessing the RFC, any step two error as to a specific impairment

has no impact on the disability determination.  (*Id.* at 5 (citing *Salles v. Comm'r of Soc. Sec.*, 229

F. App'x 140, 145 n.2 (3d Cir. 2007))).  He notes that Plaintiff has not pointed to any limitations

specifically attributable to her PTSD that were not addressed in the RFC.  (*Id.* at 8).  The

Commissioner also points out that despite Plaintiff's endorsement of conspiracy theories and

delusions the ALJ explained that they stayed at "baseline" and did not impact her other mental

functioning when she took her medication as prescribed.  (*Id.* at 6 (citations omitted)).  He

further observes that the ALJ highlighted the effectiveness of Plaintiff's treatment and found

persuasive Drs. Gavazzi's and Garito's administrative medical findings that Plaintiff could

perform unskilled work in a stable environment.  (*Id.* at 7 (citations omitted)).

     Plaintiff replies that the ALJ failed to even mention her PTSD, despite the regulations'

requirement that the ALJ consider all medically determinable impairments.  (Reply, ECF No. 11,

at 1-2 (citing 20 C.F.R. §§ 404.1523(c), 404.1545(a)(2))).  Thus, she maintains that the ALJ

erred not only in failing to consider her PTSD severe, but also in entirely disregarding its

existence and thereby not accounting for it in the RFC.  (*Id.* (citing same)).  She insists that this

distinction renders misplaced the Commissioner's citation to *Salles* for the proposition that a

step-two error is harmless as long as the ALJ finds at least one severe, medically determinable

impairment, because even if the ALJ found other such impairments she nonetheless ignored

Plaintiff's PTSD at step two and beyond.  (*Id.* at 2).  She observes that an error is only harmless where there is "no set of facts" upon which the claim could be maintained and no reasonable ALJ could have reached a contrary determination and that the court usurps the ALJ's role if it construes the evidence in such a way to conclude that the error was harmless when it may have "clouded" the ALJ's review.  (*Id.* at 3 (quoting *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015)); *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011); *Bynum v. Colvin*, 198 F. Supp. 3d 434, 437-38 (E.D. Pa. 2016) (internal citations omitted)).  Plaintiff also denies that she is able or required to identify the specific limitations imposed by her PTSD but ignored by the ALJ in the RFC, maintaining instead that the ALJ alone must conduct this analysis.  (*Id.* at 4 n.2).  Nonetheless, she notes that Dr. Desir found that her PTSD coupled with her bipolar disorder limited her ability to work close to others and that the ALJ may have credited her opinion if the ALJ had acknowledged her PTSD.  (*Id.*).

## 2. Analysis

As the Commissioner observes, failing to find an impairment severe is normally harmless error where the ALJ identifies other severe impairments at the second step and continues through the remainder of the five-step review.  *See, e.g., Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her impairments were non-severe, any error was harmless.") (citation omitted); *Shedden v. Astrue*, No. 4:10-CV-2515, 2012 WL 760632, at *9 (M.D. Pa. Mar. 7, 2012) (stating that "[a] failure to find a medical condition severe at step two will not render a decision defective if some other medical condition was found severe at step two.").  This is so because the severity inquiry at step two is nothing more than "a *de minimis* screening device to dispose of groundless claims."  *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541,

546 (3d Cir. 2003) (citations omitted).  However, a step-two error is only harmless where the ALJ nonetheless accounts for "the missing medically determinable impairment in the RFC assessment and it would not otherwise affect the outcome of the case." *Friday v. Comm'r of Soc. Sec.*, No. 1:20-cv-04504-NLH, 2021 WL 3879081, at *4, 7 (D.N.J. Aug. 31, 2021).  A denial of benefits lacks a substantial evidentiary basis where the ALJ disregards the existence of a medically determinable impairment both at step two and in the formulation of the RFC.  *Id.*

Plaintiff correctly points out that the ALJ must consider all a claimant's medically determinable impairments,[2] without regard to severity.  *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).  But in this case, the ALJ did not merely fail to find Plaintiff's PTSD severe; she ignored it.  Not once does the ALJ even mention the impairment, despite the repeated references to it in the record.  (*See generally* R. 24-34).  This failure to even acknowledge the existence of Plaintiff's medically diagnosed PTSD deprives the Court of the ability to satisfy itself that substantial evidence supports the ALJ's decision, necessitating remand.  *See Susan W. v. Kijakazi*, No. 22-cv-05765, 2023 WL 6366043, at *6 (D.N.J. Sept. 29, 2023) (remanding case where the ALJ never mentioned medically determinable impairments, at step two or during the formulation of the RFC); *Theonen v. Comm'r of Soc. Sec.*, No. 5:21-cv-1101, 2022 WL 3577414, at *3 (N.D. Ohio Aug. 19, 2022) ("the lack of a reference" to a medically determinable impairment "leaves the Court in doubt as to whether the ALJ followed the Social Security Administration's governing regulations").

The Commissioner suggests that the ALJ assessed the impact of Plaintiff's PTSD when

---

[2]  The Acting Commissioner does not (and cannot) contend that Plaintiff's PTSD, which was consistently listed among her medical diagnoses, was not medically determinable.  (*See, e.g.,* R. 514, 519, 526, 529, 531, 536, 541, 544, 546, 549, 551, 556, 560, 692, 697, 699, 703, 707, 713, 719, 729, 734, 737, 739, 742, 744, 750, 755, 758, 760, 765, 768, 770, 1011, 1016, 1019, 1021, 1024, 1026, 1029).

she reviewed medical records from Plaintiff's treating providers who had diagnosed her with it and documented her subjective complaints, mental status examination findings, and response to treatment.  (Resp., ECF No. 10, at 6).  Similarly, he suggests that the ALJ evaluated the effects of Plaintiff's PTSD when she found persuasive the administrative findings of Drs. Gavazzi and Garito, who had considered the condition.  (*Id.* at 7).  However, the Commissioner cites no support[3] for the proposition that an ALJ fulfills her mandate to "consider all of [a claimant's] medically determinable impairments" simply by reviewing or even crediting records that discuss the impairment.  *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

Instead, the ALJ has the affirmative "obligation to determine the severity of the impairment at step two (if any) and what functional limitations (if any) the impairments impose on [the claimant] in the RFC determination."  *Susan W.*, 2023 WL 6366043, at *6; *see also Robert E. v. Comm'r of Soc. Sec.*, 2021 WL 5277193, at *6 (D.N.J. Nov. 12, 2021) ("[T]he ALJ must consider that severe impairment in combination with all the additional medically determinable impairments in combination while formulating the RFC.").  Here, the Commissioner posits that Plaintiff's PTSD required no limitations unaccounted for in the RFC because while on her medications she experienced fewer delusions and was less prone to believing in conspiracy theories, but it is unclear what this has to do with her PTSD.  *See* https://www.psychiatry.org/patients-families/ptsd/what-is-ptsd (listing PTSD symptoms as "intense, disturbing thoughts and feelings related to their experience that last long after the

---

[3] The Commissioner's cited cases merely repeat the maxim that the RFC must be based upon functional limitations, not simply the existence of a diagnosis.  *See Cuffee,* 680 F. App'x at 160; *Jones*, 954 F.2d at 128-29; *Burnside*, 197 F. Supp. 3d at 719.  But, as the Commissioner himself observes, Plaintiff does not argue for any specific limitation based upon her PTSD diagnosis.  (Resp., ECF No. 10, at 8).  Rather, she asks that the ALJ fulfill her regulatory duty to consider whether her PTSD, in conjunction with her other impairments, should give rise to any further restrictions in the RFC.

traumatic event has ended[,] . . . flashbacks or nightmares; . . . sadness, fear or

anger; . . . feel[ing] detached or estranged from other people," but not mentioning delusions,

belief in conspiracy theories, or similar symptoms) (last visited May 6, 2024).  Indeed, courts

have required ALJs to address the functional limitations, if any, caused by a medically

determinable impairment, even where there is evidence in the record that it "does not impact

ordinary conditions of daily life."  *Thoenen*, 2022 WL 3577414, at *4.

Because the ALJ ignored Plaintiff's PTSD throughout the decision, the Court will

remand the matter.

### B.      Failure to Properly Consider Dr. Desir's Opinion[4]

Regarding this opinion, the ALJ wrote:

> Dr. Desir opined that the claimant was seriously limited in her
> ability to work in close proximity to others without being unduly
> distracted, deal with normal work stress, and would miss one day
> per month (Exhibit B16F). The undersigned finds these limitations
> to no[t] be wholly persuasive. The claimant's treatment notes
> consistently documented that she was cooperative with appropriate
> affect[;] however[,] at times the claimant presented [ ] with
> delusions and paranoia (e.g. Exhibit B7F pp. 2, 8, 14, 19, 24, 29,
> 34, 39).

(R. 32).

### 1.      The Parties' Positions

Plaintiff posits that the opinion of Dr. Desir, as her treating psychiatrist, was entitled to

great weight and could not be rejected without contrary evidence or adequate explanation.  (Pl.'s

---

[4]  Notwithstanding the ALJ's error at step two in failing to address the severity of
Plaintiff's medically determinable impairment of PTSD, the ALJ did not decide the case on that
basis but proceeded through the remainder of the five-step sequential analysis.  However, she
again omitted any reference to PTSD during the formulation of Plaintiff's RFC, constituting at
an error at that stage.  Accordingly, the Court also considers Plaintiff's additional argument
potentially impacting the RFC, i.e., that the ALJ improperly rejected the opinion of Dr. Desir.

Br., ECF No. 9, at 8 (citing *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008);

*Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d

Cir. 1988); *Gilliland v. Heckler*, 786 F.2d 178 (3d Cir. 1986); *Wallace v. Sec'y of HHS*, 722 F.2d

1150, 1155 (3d Cir. 1983))).  She acknowledges that the applicable regulations no longer require

that any specific weight be assigned when considering a treating provider's opinion and instead

establish consistency and supportability as the most important factors, but she notes that such

opinions may still be "the most persuasive" opinions based on these factors and that the

regulations continue to require consideration of the nature and extent of the treatment

relationship due to the "unique perspective" of long-term treating providers.  (*Id.* at 9-10 (citing

82 Fed. Reg. 5844, 5853, 5857 (Jan. 18, 2017))).

After summarizing Dr. Desir's opinion, Plaintiff contends that if the ALJ had credited it,

she would have been compelled to find her disabled because: (1) an employer would tolerate no

absences during the initial probationary period, but Plaintiff would miss one day per month; and

(2) an individual who is off-task up to 20 percent of the day due to her proximity to coworkers

would be unemployable.  (*Id.* at 11).  She then offers three reasons that the ALJ's rejection of the

opinion was erroneous.  (*Id.* at 11-18).

First, she contends that Dr. Desir's opinion was consistent with the other record evidence

– such as therapy notes, inpatient psychiatric hospitalization records, and Plaintiff's testimony

and Adult Function Report – making it more persuasive under the regulations.  (*Id.* at 11-12

(citing 20 C.F.R. § 404.1520c(c)(2); R. 47-63, 337-44, 415-38, 442-62, 559-666, 773-908)).  She

highlights several of her bizarre, paranoid and/or seemingly delusional statements in the record.

(*Id.* at 12-13 (citations omitted)).  She observes that the ALJ never considered the consistency of

Dr. Desir's opinion with the remainder of the evidence as required by the regulations.  (*Id.* at 12-

18

14 (citation omitted)).

Second, she asserts that the ALJ should have found Dr. Desir's opinion more persuasive because it was supported by an explanation and objective medical evidence.  (*Id.* at 14 (citing 20 C.F.R. § 1520c(c)(1))).  She argues that the ALJ merely cherry-picked references to her "cooperative [and] appropriate affect" and that the eight pages cited by the ALJ from the extensive record in fact supports the opinion because they reflect Plaintiff's ongoing delusions and paranoia.  (*Id.* at 14-18 (citing R. 512-13, 545, 549, 550) (case citations omitted)).  Additionally, she points to mental examinations showing vigilance and poor boundaries and therapist notes recording delusions, paranoid thoughts, nightmares, racing thoughts, insomnia, pressured speech and bizarre behaviors like wearing latex gloves when signing her name to stop the government from collecting her DNA.  (*Id.* at 16-17).

Third, while acknowledging that the ALJ was not required under the regulations to explain how she considered Dr. Desir's treatment relationship with Plaintiff, she nonetheless maintains that the ALJ should have assigned it more persuasive value in light of: (1) Dr. Desir's status as a board-certified psychiatrist (i.e., a specialist in the relevant area), and (2) her longitudinal relationship with Plaintiff (unique among her treatment providers).  20 C.F.R. § 404.1520c(c)(3)-(4).

The Commissioner responds that because Plaintiff filed her claim after the revised regulations took effect in March 2017 the ALJ need not attach any specific weight to a treatment provider's medical opinion but must discuss its supportability and consistency (although generally not other factors) under a "reasonable articulation" standard that allows the court to trace the ALJ's logic.  (Resp., ECF No. 10, at 8-9 (citing 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c); 82 Fed. Reg. 5844, 5858) (additional citation omitted)).  He argues that Dr.

Desir's opinion "as a whole" supported rather than contradicted the ALJ's because she opined

that Plaintiff had very good or better abilities in most areas of mental functioning and satisfactory

abilities in several others and that she was "doing well" and "stable" on her medication.  (*Id.* at

9-10 (citing R. 1034-35)).  He maintains that the ALJ properly found not wholly persuasive the

substantial restrictions on Plaintiff's ability to work in proximity to others and deal with work

stress or her purported inability to work without missing one day per month because Dr. Desir

did not offer objective medical findings to support these limitations.  (*Id.* at 10 (citing same)).

The Commissioner adds that the ALJ correctly refused to credit these findings because they were

inconsistent with the results of mental status examinations performed by Dr. Desir and others and

with records showing substantial improvement with treatment, the State agency administrative

psychological findings, and Plaintiff's ADLs.  (*Id.* at 10-11 (citing R. 30-32, 512, 518-19, 525, 530,

535, 539-40, 545, 550, 586, 701-02, 758, 768, 1019, 1029)).  Further, he notes that the "only

explanation" offered by Dr. Desir for her opinion that Plaintiff should work in a low-stress

environment is that when Plaintiff previously attempted to work in a stressful environment she

decompensated resulting in neglect of self-care (including her medication regimen) and

exacerbation of her mental symptoms.  (*Id.* at 10 n.3).  He also points out that the ALJ determined

that Plaintiff had limitations in social functioning and stress tolerance and accounted for them in

the RFC by restricting her interaction and co-working with others, the complexity of her tasks,

and her capacity for changes in routine.  (*Id.* at 11 (citing R. 29)).

  In reply, Plaintiff reiterates that the ALJ did not properly articulate the supportability and

consistency of Dr. Desir's opinion as required by the regulations.  (Reply, ECF No. 11, at 5

(citations omitted)).  She observes that the Commissioner never refutes that the ALJ failed to

discuss consistency and insists that the ALJ's articulation of supportability is woefully

inadequate because she merely cites medical examination results reflecting that Plaintiff was

"cooperative with appropriate affect" without engaging with any of the other extensive medical

evidence cited in Plaintiff's opening brief.  (*Id.* at 6).  She accuses the Commissioner of *post hoc*

cherry-picking of the record in an attempt to bolster the ALJ's decision with evidence not

actually relied upon by her therein.  (*Id.* (citing *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196

(1947); *Fargnoli v. Massanari*, 247 F.3d 34, 44 n.7 (3d Cir. 2001); *Sykes v. Apfel*, 228 F.3d 259,

271 (3d Cir. 2000) (additional citation omitted))).  Similarly, she asserts that the ALJ failed to

address Dr. Desir's supporting explanation for her opinion and submits that the Commissioner's

attempt to discredit it amounts to another after-the-fact rationalization of the ALJ's decision.  (*Id.*

at 7-8 (citing R. 1035)).

## 2.      Analysis

The Commissioner modified Social Security's regulations in 2017, changing the way

ALJs evaluate medical evidence.  The prior regulations, governing claims filed before March 27,

2017, divided medical sources into three categories: treating, examining, and non-examining.

*See* 20 C.F.R. §§ 404.1527(c), 416.927(c).  ALJs were to weigh each medical opinion and could

sometimes afford controlling weight to opinions from treating sources. *See id.*

Under the new regulations, ALJs do not place medical sources into these categories and

can no longer afford controlling weight to any opinion.  *See id.* §§ 404.1520c(c), 416.920c(c).

Instead, ALJs now evaluate the persuasiveness of each medical opinion and each prior

administrative medical finding.  *See id.*  Five factors determine persuasiveness:

(1) supportability; (2) consistency; (3) relationship with the claimant, including length, purpose,

and extent of the treatment relationship, as well as frequency of examinations and whether the

medical source examined the claimant firsthand; (4) specialization; and (5) other factors, like

"evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *See id.* Supportability and consistency are the most important factors. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency. *Id.*

Regarding supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). Regarding consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(2).

It is well established that an ALJ is free to reject a medical source opinion but in so doing must indicate why evidence was rejected so that a reviewing court can determine whether "significant probative evidence was not credited or simply ignored." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). Although the ALJ need not discuss "every tidbit of evidence included in the record," *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004), he or she must consider all pertinent medical and non-medical evidence and "explain [any] conciliations and rejections." *Burnett*, 220 F.3d at 122. Accordingly, "[t]he ALJ must provide a 'discussion of the evidence' and an 'explanation of reasoning' for [her] conclusion sufficient to enable meaningful judicial review." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (quoting *Burnett*, 220 F.3d at 120).

22

Here, the ALJ failed to properly articulate either the supportability or the consistency of Dr. Desir's opinion.  Regarding supportability, the ALJ merely stated that Plaintiff's treatment notes from Merakey repeatedly reflected that she was "cooperative with appropriate affect" (while acknowledging that even these findings were interspersed with instances in which she exhibited "delusions and paranoia").  (R. 32).  These delusions and paranoid thoughts included avoidance of touching things due to fear of her DNA being left behind, fear of "contamination," and beliefs in time travel, that "the government [is] experimenting on people," and that people were controlling her via her food, leading to a refusal to eat outside of her home.  (R. 512-13, 534, 544-45, 549-50).  Although "[t]here is no requirement that the ALJ discuss in [her] opinion every tidbit of evidence included in the record," *Hur v. Barnhart*, 94 F. App'x. 130, 133 (3d Cir. 2004), the ALJ's fixation on examination results simply showing a "cooperative and appropriate affect" to the exclusion of any serious treatment of Plaintiff's bizarre and, in some instances, limiting fantasies and illusions amounts to improper cherry-picking.  *See Piper v. Saul*, No. 2:18-1450, 2020 WL 709517, at *4 (W.D. Pa. Feb. 12, 2020) ("The ALJ is not entitled to 'cherry  pick' favorable evidence and ignore records that run counter to her findings."); *Fanelli v. Colvin*, No. 3:16-CV-1060, 2017 WL 551907, at *9 (M.D. Pa. Feb. 10, 2017) ("[An] evaluation[ ] where the evaluator mentions only isolated facts that militate against the finding of disability and ignores much other evidence that points another way, amounts to a 'cherry-picking' of the record which this Court will not abide."); *Griffith v. Astrue*, 839 F. Supp. 2d 771, 783 (D. Del. 2012) ("Plaintiff correctly argues that an ALJ is not permitted to 'cherry-pick' only that that evidence that supports her position.").

The ALJ's supportability analysis also fails to make any mention of the reasons given by Dr. Desir for her opinion, despite the fact that under the regulations the ALJ must address the

"supporting explanations presented by a medical source . . . to support his or her medical opinion(s) . . . ." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  The Commissioner attempts to fill this gap by suggesting that the opinion was unsupported by "objective medical findings" and that the explanation given was limited to noting that Plaintiff's past decompensation occurred when working in a stressful, semi-skilled environment whereas the ALJ accounted for these findings by limiting her to simple, repetitive tasks and decision-making with only occasional changes in routine.  (Resp., ECF No. 10, at 10 n.3).  However, these reasons appear nowhere in the ALJ's decision and therefore constitute improper *post hoc* justifications.[5]  *See Schuster v. Astrue*, 879 F. Supp. 2d 461, 466 (E.D. Pa. 2012) ("*post-hoc* rationalization[s]" are not considered because "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision.") (quoting *Keiderling v. Astrue*, No. 07-2237, 2008 WL 2120154, at *3 (E.D. Pa. May 20, 2008)).

The ALJ's consistency analysis is even more problematic.  As Plaintiff notes, the Commissioner does not deny that the ALJ says nothing about the consistency of Dr. Desir's opinion with evidence from other medical sources.  (*See* R. 32).  Nonetheless, he posits that Dr. Desir's assessment was inconsistent with the results of mental examinations performed by other sources, treatment records showing improvement in Plaintiff's condition, the administrative findings of Drs. Gavazzi and Garito, and Plaintiff's ADLs.  (Resp., ECF No. 10, at 10-11 (citations

---

[5]  The Commissioner also attempts to salvage the ALJ's decision on the basis "that as a whole the opinion supported (not contradicted) the ALJ's determination" of disability because Dr. Desir concluded that Plaintiff had satisfactory or better abilities in most areas of mental functioning.  (Resp., ECF No. 10, at 9).  This argument is curious considering that the ALJ found the opinion "to not be wholly persuasive" and clearly did not account for portions of it in the RFC.  (R. 32).  Significantly, the Commissioner does not refute Plaintiff's arguments that the ALJ would have been required to find her disabled if she had credited Dr. Desir's findings of serious limitations in the ability to "work in coordination with or proximity to others without being unduly distracted" and Plaintiff's need to miss one day of work per month.  (R. 1034-35).

omitted)).  However, the ALJ never pointed to any of this evidence as inconsistent with Dr.

Desir's opinion.  *See Schuster*, 879 F. Supp. 2d at 466.

Because the ALJ failed to properly articulate the supportability and consistency of Dr.

Desir's opinion, "[t]he most important factors [the ALJ] consider[s] when [ ] evaluat[ing] the

persuasiveness of medical opinions," the Court will remand this matter.  20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2).

### C.        Omission of Credibly Established Limitations in the Hypothetical to the VE

In addition, Plaintiff argues that the ALJ failed to include all of Plaintiff's credibly

established limitations in the hypothetical to the VE, whose testimony therefore fails to constitute

substantial evidence of other work available to Plaintiff.  Because I remand this matter for further

consideration of Plaintiff's PTSD and Dr. Desir's opinion, which may in turn affect the ALJ's

determination regarding Plaintiff's RFC and thus the hypothetical posed to the VE, I will not

address Plaintiff's argument on this issue.  *See Steininger v. Barnhart*, No. 04-5383, 2005 WL

2077375, at *4 (E.D. Pa. Aug, 24, 2005) (not addressing additional arguments because the ALJ

may reverse his findings after remand).  It is possible that, on remand, the ALJ may reach

different conclusions as to the RFC, resulting in an entirely new hypothetical to the VE.

### VI.     CONCLUSION

For the reasons set forth above, Plaintiff's request for review is **GRANTED**, and the

matter is remanded for further proceedings consistent with this memorandum.

BY THE COURT:


  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge